UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
DIVISION
____

GREG ALLEN BRENEMAN,

        Petitioner,

v.

FREDEANE ARTIS,

        Respondent.

_____/

Case No. 1:23-cv-1236

Honorable Sally J. Berens

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (Pet., ECF No. 1, PageID.18.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Leave to Proceed *In Forma Pauperis*

Petitioner has requested leave of court to proceed *in forma pauperis* (ECF No. 2) under 28 U.S.C. § 1915(a)(1) and has filed an affidavit of indigence. It reasonably appears that paying the cost of this filing fee would impose an undue financial hardship. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988). Accordingly, the Court will grant Petitioner's request to proceed *in forma pauperis*.

### II.    Factual Allegations

Petitioner Greg Allen Breneman is incarcerated by the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility (TCF) in Lapeer, Lapeer County, Michigan. Following a jury trial in the Berrien County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b(1)(a); two counts of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c(1)(a); and one count of aggravated indecent exposure, in violation of Mich. Comp. Laws § 750.335a. *See People v. Breneman*, No. 340824, 2019 WL 254277, at *1 (Mich. Ct. App. Jan. 17, 2019). The trial court sentenced Petitioner as a third-offense habitual offender, Mich. Comp. Laws § 769.11, to 26 to 75 years' incarceration for the CSC-I convictions,

12 to 30 years' incarceration for the CSC-II convictions, and a term of 2 to 4 years' incarceration for the aggravated indecent exposure conviction. *See id.*

Petitioner appealed to the Michigan Court of Appeals, raising the following claims for relief: (1) counsel rendered ineffective assistance by failing to object to "inadmissible testimony given by two sexual assault experts," *id.*; and (2) the prosecution "engaged in misconduct that deprived him of a fair trial [by eliciting] the . . . challenged testimony from the nurse examiner and the expert witness," *id.* at *5. The Michigan Court of Appeals described the basic facts underlying Petitioner's convictions as follows:

> The complainant testified that when she was 12 years old, Breneman sexually assaulted her on two occasions. She described Breneman's actions during those sexual assaults and never indicated that a different person could have been the perpetrator. A medical examination supported the complainant's testimony regarding the fact that she was assaulted and the manner in which she was assaulted. In addition, the complainant testified that Breneman ejaculated onto a blanket during the sexual assault, and the prosecution presented scientific testimony that Breneman's semen was on the blanket that the complainant and her mother provided to police.

*Id.* at *1.

On January 17, 2019, the court of appeals affirmed Petitioner's convictions and sentences. *Id.* at *1. Petitioner's application for leave to appeal to the Michigan Supreme Court was denied on December 29, 2019. *People v. Breneman*, 936 N.W.2d 288 (Mich. 2019).

Petitioner then filed a *pro se* motion for relief from judgment pursuant to Rule 6.500 of the Michigan Court Rules. (ECF No. 1-1, PageID.65–78.) After the prosecution filed a response to Petitioner's motion, the trial court appointed counsel to represent Petitioner and ordered that counsel supplement or amend the Rule 6.500 motion within 56 days. (*Id.*, PageID.86–87.) On February 2, 2021, counsel Mary Owens filed a supplemental Rule 6.500 motion on Petitioner's behalf. (*Id.*, PageID.91–109.) The trial court held an evidentiary hearing with respect to Petitioner's motion for relief from judgment on March 19, 2021. (*Id.*, PageID.110.) After hearing

4

testimony from various witnesses, the trial court denied Petitioner's Rule 6.500 motion. (ECF No. 1-2, PageID.217–19; 255.) Petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals. (*Id.*, PageID.239–65.) The court of appeals denied that application on February 16, 2022. (*Id.*, PageID.266.) Petitioner then filed a *pro se* application for leave to appeal to the Michigan Supreme Court. (*Id.*, PageID.267–312.) The supreme court denied that application on January 31, 2023. (*Id.*, PageID.314.)

On March 31, 2023, Petitioner filed a *pro se* Rule 6.502 successive motion for relief from judgment. (ECF No. 1-3, PageID.315–42.) In an order entered on April 24, 2023, the trial court denied Petitioner's motion, concluding that it failed to meet the standard for a successive motion for relief from judgment because it did not allege the existence of any newly discovered evidence. (*Id.*, PageID.346–49.) Petitioner filed a *pro se* delayed application for leave to appeal to the Michigan Court of Appeals on June 14, 2023. *See* Register of Actions, *People v. Breneman*, Case No. 366586, https://www.courts.michigan.gov/c/courts/coa/case/366586 (last visited Dec. 5, 2023).

While Petitioner's delayed application for leave to appeal was pending, Petitioner filed his first petition for habeas corpus before this Court in *Breneman v. Artis*, 1:23-cv-640 (W.D. Mich. 2023). In his amended petition, Petitioner raised four grounds for relief, separate from those at issue here. *Breneman v. Artis*, 1:23-cv-640, 2023 WL 5266434 at *3 (W.D. Mich. Aug. 16, 2023). On August 16, 2023, the Court dismissed the petition without prejudice for failure to exhaust state court remedies. *Id.* at *5.

During that time, Petitioner also filed a *pro se* delayed application for leave to appeal to the Michigan Court of Appeals, which was denied by order entered on August 22, 2023. *People v. Breneman*, No. 366586 (Mich. Ct. App. Aug. 22, 2023). Petitioner's application for leave to appeal

5

to the Michigan Supreme Court was similarly denied on October 31, 2023. *People v. Breneman*, No. 166069 (Mich. Oct. 31, 2023).

On November 22, 2023, Petitioner filed this habeas corpus petition raising two grounds for relief, as follows:

>   I.   Trial counsel failed to object to inadmissible testimony from Nurse Bonnie Christophers and sexual assault.
>
>   II.  The prosecutor engaged in misconduct and deprived Mr. Breneman of his due process right to a fair trial.

(Pet., ECF No. 1, PageID.7, 9.)

### III. AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

6

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

7

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

8

## IV. Discussion

### A. Ineffective Assistance of Counsel

In his first ground for habeas relief, Petitioner contends that his trial counsel rendered ineffective assistance when counsel failed to object to testimony by the nurse examiner that, during her medical examination, the complainant identified Petitioner as her assailant. (Pet., ECF No. 1, PageID.7–9.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. State of La.*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

As the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111,

123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential," per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Moreover, scrutiny of the state court's analysis of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . " (citing *Harrington*, 562 U.S. at 102)).

In evaluating Petitioner's claim of ineffective assistance of counsel on direct appeal, the Michigan Court of Appeals explained:

> To establish a claim of ineffective assistance, a defendant must prove that his lawyer's performance was objectively unreasonable in light of prevailing professional norms and that, but for his lawyer's error, it is reasonably probable that the outcome would have been different. *People v. Pickens*, 446 Mich. 298, 302–303; 521 N.W.2d 797 (1994). It is presumed that the defendant's lawyer provided effective assistance. *People v. Vaughn*, 491 Mich. 642, 670; 821 N.W.2d 288 (2012). The defendant bears a heavy burden of proving otherwise. *People v. Seals*, 285 Mich. App. 1, 17; 776 N.W.2d 314 (2009). In doing so, a defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. *People v. Knapp*, 244 Mich. App. 361, 385–386, 386 n. 7; 624 N.W.2d 227 (2001). The defense lawyer's performance must be measured against an objective standard of reasonableness. *Payne*, 285 Mich. App. at 188, 190. This Court "neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v. Mutuszak*, 263 Mich. App. 42, 58; 687 N.W.2d 342 (2004).

*Breneman*, 2019 WL 254277, at *1. Although the Michigan Court of Appeals relied upon state authority for the court's statement of the standard, *People v. Pickens*, 521 N.W.2d 797 (Mich. 1994), the *Pickens* court specifically identified *Strickland* as the source of the standard. *Id.*, 521 N.W.2d at 802. Thus, there is no question that the court of appeals applied the correct standard.

10

The court of appeals' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the court of appeals applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's ineffective assistance claims is an unreasonable application of *Strickland*, or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court, therefore, will consider whether the court of appeals reasonably applied the standard for Petitioner's claim of ineffective assistance of counsel.

11

The Michigan Court of Appeals agreed that, under state law, it was improper for the nurse examiner to testify that the complainant had identified Petitioner as her assailant. *Breneman*, 2019 WL 254277, at *2. However, the court concluded that "Breneman's lawyer had a legitimate tactical reason for refraining from objecting to the nurse examiner's testimony." *Id.* at *3. The court observed that, by the time that the nurse examiner had testified, both the complainant and her mother had already testified. *Id.* The complainant directly identified Petitioner as the assailant, and the complainant's mother testified that her daughter identified Petitioner as the perpetrator during her initial disclosure of the abuse. *Id.* The court of appeals panel went on to explain:

> If Breneman's lawyer had objected to the nurse examiner's testimony relating the complainant's statements, the jury might well have concluded that Breneman was attempting to hide something or that he feared the nurse examiner's testimony for some reason. Instead of running that risk, Breneman's lawyer chose to pursue a defense that the complainant was simply not credible in her identification of Breneman as the perpetrator, whether that identification was made to her mother, police, or the nurse examiner. Because "there might have been a legitimate strategic reason for the act of omission," [*People v. Gioglio*, 296 Mich. App. 12, 22–23, 815 N.W.2d 589, *judgment vacated in part, appeal denied in part,* 493 Mich. 864, 820 N.W.2d 922 (2012)], we cannot conclude that Breneman's lawyer's failure to object to the nurse examiner's hearsay testimony was objectively unreasonable in light of prevailing professional norms.

*Id.* Expressed in the language of *Strickland*, the court concluded that Petitioner's trial counsel did not act in a professionally unreasonable manner when he failed to object to the nurse examiner's testimony.

The court of appeals went on to address the *Strickland* prejudice prong:

> [E]ven if Breneman's lawyer had objected to and prevented the nurse examiner from providing this hearsay testimony, Breneman has failed to demonstrate any reasonable probability that the outcome of the trial would have been different. The complainant testified at trial and was subject to cross-examination. She testified that Breneman was the person who sexually assaulted her on two occasions. In addition, the complainant's mother testified and was subject to cross-examination. The mother related her conversation with the complainant in the school office, when the complainant identified Breneman as the person who sexually assaulted her. Furthermore, the complainant testified that Breneman ejaculated on a blanket while engaged in the act of digitally penetrating her, and the prosecution provided

12

> scientific evidence indicating that Breneman's semen was found on the blanket provided to police. In light of this evidence, the outcome of the trial would not have been different, even if the nurse examiner had not been allowed to testify to the complainant's statements that Breneman assaulted her. Consequently, Breneman cannot establish a claim of ineffective assistance based on the nurse examiner's testimony.

*Id*. Put simply, the court of appeals concluded that, because the hearsay evidence was cumulative of the testimony offered by two previous witnesses, exclusion of the evidence would not have changed the outcome. The appellate court considered and answered exactly the question that *Strickland* asks on the prejudice prong: "[is there] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

But that still leaves the question, was the court of appeals' determination that the hearsay testimony was not prejudicial because it was cumulative of other evidence a reasonable application of clearly established federal law? In *Wong v. Belmontes*, 558 U.S. 15 (2009), the Supreme Court concluded that adding cumulative evidence to what was already there "would have made little difference" such that Belmontes could not "establish *Strickland* prejudice." *Wong*, 558 U.S. at 22. More recently, the Sixth Circuit assessed whether the introduction of cumulative evidence could be considered prejudicial in *England v. Hart*, 970 F.3d 698 (6th Cir. 2020), stating:

> Next, England argues that the affidavit was corroborative, rather than cumulative, of the aspects of the Woodfork statements that the prosecution relied on. "[E]vidence that is merely cumulative of that already presented does not . . . establish prejudice." *Getsy v. Mitchell*, 495 F.3d 295, 313 (6th Cir. 2007) (en banc) (quoting *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006)). Determining what constitutes cumulative evidence can be difficult, as "[o]ur cases . . . do not tell us clearly when evidence becomes sufficiently different to no longer be 'cumulative' or at what level of generality one must compare the evidence." *Vasquez v. Bradshaw*, 345 F. App'x 104, 120 (6th Cir. 2009). Our most frequent formulation of the standard is that "new evidence" is not cumulative if it "differs both in strength and subject matter from the evidence actually presented at [trial]." *Goodwin v. Johnson*, 632 F.3d 301, 327 (6th Cir. 2011).

13

*England*, 970 F.3d at 714–15.[2]

Under the *England* standard, the nurse examiner's recounting of the victim's report identifying Petitioner was cumulative to the victim's testimony as well as the testimony of the victim's mother. The nurse examiner's testimony did not materially differ in "strength" or "subject matter" from the victim's trial testimony and there was nothing about the timing or circumstance of the disclosures that lent any meaningful corroborative value to the testimony. Therefore, even if the testimony was "hearsay" testimony, its introduction did not make a difference sufficient to establish *Strickland* prejudice. Put differently, Petitioner has failed to show that the state appellate court's resolution of this claim is contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief on this claim.

### B.     Prosecutorial Misconduct

Petitioner next claims that the prosecutor deprived Petitioner of his right to due process when he elicited the improper testimony from the nurse examiner discussed above. (Pet., ECF No.

---

[2] The Sixth Circuit has found the court of appeals' reasoning persuasive in multiple cases. *See, e.g., Barnes v. Warden, Ross Corr. Inst.,* No. 19-3389, 2019 WL 5576345, at *2 (6th Cir. Sept. 16, 2019) ("Review of the record confirms that Andrews's testimony—whether hearsay or not—was cumulative to Martin's own testimony about the incident. Even assuming the testimony did amount to hearsay, Barnes cannot make a substantial showing that counsel's failure to object resulted in prejudice."); *Dobbs v. Trierweiler,* No. 16-2209, 2017 WL 3725349, at *2 (6th Cir. Apr. 7, 2017) ("[T]he testimony as cumulative with regard to the second shooting . . . [a]nd because the testimony was harmless, Dobbs could not show that his attorney's failure to object to it was objectively unreasonable or that prejudice resulted."); *Thurmond v. Carlton*, 489 F. App'x 834, 842 (6th Cir. 2012) ("Because Baxter's [hearsay] testimony was cumulative to the victim's, the lack of an objection (likely to be sustained) did not prejudice the defense."); *Anthony v. DeWitt*, 295 F.3d 554, 564 (6th Cir. 2002) ("[A]dmission [of the hearsay statements] would constitute harmless error because of our conclusion that they did not have a substantial and injurious effect or influence in determining the jury's verdict. . . . Prior to Regina Knox's testimony, there was sufficient corroborating testimony from John Knox and Mary Payne describing the events on the evening of Smith's murder, making Regina Knox's hearsay testimony in this regard cumulative. . . . [H]abeas petitioners are not entitled to relief based on trial error unless they can establish that the error resulted in actual prejudice . . . .").

14

1, PageID.11.) However, as Petitioner acknowledges in Ground I, Petitioner did not object to the introduction of this testimony at trial. His claim is, therefore, procedurally defaulted.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "adequate and independent" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004), abrogated on other grounds by *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d at 291.

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new, reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual

15

innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The Michigan Court of Appeals noted that Petitioner failed to preserve his prosecutorial misconduct claim and rejected it under a plain error review, explaining:

> Breneman did not object to the prosecutor's questions of the witnesses and did not object to the testimony elicited by the prosecutor to which he now objects. Thus, the claim of prosecutorial misconduct was not preserved for appellate review. As stated by this Court in *Unger*, "[b]ecause the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. (quotation marks and citation omitted).

*Breneman*, 2019 WL 254277, at *5. After expressly noting Petitioner's default in failing to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none. *Id.* at *6.

In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673–74 (6th Cir. 2006); *Scott v. Mitchell*, 209 F.3d 854, 866–68 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284–85 (6th Cir. 1989). As explained above, Petitioner must show either cause and prejudice, or actual innocence to overcome his procedural default of his prosecutorial misconduct claims.

Petitioner has made no effort to advance a claim of actual innocence. Viewed liberally, Petitioner contends only that the cause for his procedural default of his prosecutorial misconduct

16

claim was counsel's ineffective assistance in failing to object to the questions posed to the nurse examiner and the answers provided.[3]

As set forth above, the Michigan Court of Appeals reasonably determined that Petitioner did not establish that his counsel was ineffective in failing to object to the testimony of the nurse examiner. Although that determination is entitled to deference with regard to evaluation of Petitioner's independent ineffective assistance claim, the Sixth Circuit has concluded that the determination is not entitled to deference when the ineffective assistance is raised as cause to excuse a procedural default. *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). When raised as "cause," the ineffective assistance claim is subject to *de novo* review. *Id*.[4] Put differently, this Court is free to reach a different conclusion regarding ineffective assistance as cause for the procedural default even though the court of appeals' rejection of the independent ineffective assistance claim was a reasonable application of clearly established federal law.

Although this Court's consideration of cause is not impeded by deference under Section 2254(d), this Court is still bound by the presumption established in Section 2254(e)(1). That subsection provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall

---

[3] Although the prosecutorial misconduct claim is conceptually distinct from the ineffective assistance claim—whether the prosecutor was wrong to ask the question is a separate issue from whether counsel was ineffective for failing to object—the impact of those separate wrongs on Petitioner's trial is such a critical part of both claims that they effectively merge.

[4] *See also Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) ("'An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel.' *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). In particular, '[t]he latter must meet the higher AEDPA standard of review, while the former need not.' *Id*. at 237; *see also, e.g., Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019); *Joseph*, 469 F.3d at 459. Thus, we review de novo the question of whether ineffective assistance of appellate counsel excuses Chase's procedural default of his *Alleyne* claim.").

    have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). This Court must presume that the court of appeals' factual determinations regarding the victim's prior testimony and the prior testimony of the victim's mother are correct. Petitioner certainly makes no effort to rebut the presumption with any evidence to the contrary, much less clear and convincing evidence.

    Accepting those factual determinations compels the further conclusion that the wrongful evidence was cumulative and that there is no reasonable probability that the nurse examiner's testimony changed the outcome. Accordingly, this Court finds that Petitioner has failed to show the prejudice necessary to establish ineffective assistance of counsel. Absent that prejudice, Petitioner has failed to show "cause" to excuse his procedural default.[5] Petitioner's procedural default, therefore, bars consideration of his prosecutorial misconduct claim.

## V.    Certificate of Appealability

    Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

    The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

---

[5] Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). But Petitioner's failure to establish *Strickland* prejudice forecloses a finding of not only cause but prejudice as well because "[t]he prejudice analysis for the procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this context." *Hall*, 563 F.3d at 237.

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

Although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order granting Petitioner leave to proceed *in forma pauperis* and denying a certificate of appealability.

Dated: December 18, 2023           /s/ Sally J. Berens
                                   SALLY J. BERENS
                                   United States Magistrate Judge